IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| John T. Smith, ) | Case No. 8:13-cv-01270-RMG-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Tarcia Linnetta James, John B. McRee, ) | |
| Terry L. Andrews, James Parker, and ) | |
| Leroy Cartledge, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 60.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on May 8, 2013.[1] [Doc. 1.] On September 26, 2013, Defendant filed a motion for summary judgment. [Doc. 60.] On September 27, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 61.] Plaintiff filed a response in

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on May 8, 2013. [Doc. 1-8 (envelope marked as received by prison mailroom on May 8, 2013).]

opposition on October 17, 2013 [Doc. 64], and Defendants filed a reply on November 4, 2013 [Doc. 66].  Accordingly, Defendant's motion is now ripe for review.

## BACKGROUND

Plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC") and currently is housed at Lee Correctional Institution ("Lee"), but during the time of the alleged incidents, was housed at McCormick Correctional Institution ("McCormick") [*See* Doc. 1 at 2.]  Plaintiff alleges that Nurse Tarcia James ("James") made sexually harassing statements to Plaintiff and imitated his paralyzed right arm. [*Id.* at 5.]  He also alleged that James blocked Plaintiff from submitting sick call requests in March through June of 2012. [*Id.*] Further, Plaintiff claims that James discriminated against him by making disparaging comments about his paralyzed right arm in front of Terry Andrews ("Andrews"), the Nurse Administrator at McCormick. [*Id.*]  Plaintiff asserts that Andrews allowed James to continue to discriminate against him even after Andrews became aware of the harassment. [*Id.* at 6.] Plaintiff alleges that James had sexual intercourse with an inmate and took naked pictures of herself for another inmate. [*Id.*] Plaintiff made a complaint against James to the South Carolina Department of Labor, Licensing and Regulation Department, but the complaint was dismissed after an investigation. [*Id.* at 6–7.]

Plaintiff requests James' termination and also asserts that Warden Cartledge and Associate Warden Parker should be terminated because they knew of James' harassment, discrimination, and sexual misconduct and did not act. [*Id.* at 9.]  Plaintiff demands that Andrews and Dr. McRee be terminated for failing to fire James after knowing of the harassment and discrimination.  [*Id.* at 10.]  He also requests that Defendant Byars

2

terminate James. [*Id.*]  Finally, Plaintiff requests compensatory and punitive damages against each individual defendant. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the complainant's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983

3

allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,

531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at McCormick [*see* http://public.doc.state.sc.us/scdc-public/, last visited May 29, 2014, showing that Plaintiff is now housed at Lee)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from McCormick *see id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[2]

---

[2] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

7

in a § 1983 lawsuit.  *See Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**Claims for Monetary Damages**

### *Deliberate Indifference*

Liberally construing his Complaint, Plaintiff contends Defendants were deliberately indifferent to his serious medical needs by denying him treatment and violated his rights by allowing James' harassment to continue.  [Docs. 1, 64.]  Defendants argue Plaintiff has failed to establish his claim because he has failed to show he had a serious medical need, failed to demonstrate that Defendant exhibited deliberate indifference to Plaintiff's medical needs, and has failed to state a claim against James because words and statements are not sufficient to give rise to a § 1983 claim.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).  Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).  Within the United States Court of Appeals for the

Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious

9

injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, Plaintiff has failed to assert a serious medical condition, which is fatal to his claim. Even if the Court assumed without deciding that Plaintiff's paralyzed arm was a sufficiently serious medical condition,[3] Plaintiff has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. First, Plaintiff acknowledges that his conditions were not ignored. [*See, e.g.*, Doc. 64 at 1 (alleging Plaintiff spent time in the doctor's clinic).] Plaintiff merely complains he was not provided additional treatment, such as the new shoes that he was promised. [*Id.*] However, the medical records show that Plaintiff's request for shoes was considered and rejected because the pair he had been provided was sufficient. [Doc. 60-12.] As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g.*, *Jackson*, 846 F.2d at 817.

Second, evidence produced by Defendant precludes finding Defendant consciously disregarded a known substantial risk to Plaintiff's health or safety. Plaintiff's medical records show that he received immunizations, received mental health treatment, was assisted with personal hygiene as a result of his paralyzed hand, received consultations for difficulty sleeping, received neoprene sleeves for his paralyzed arm, received an X-ray when he complained of joint pain, was seen for dry skin and pain in right leg, hip, back and

---

[3] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

knees, was seen each time he went on a "hunger strike," and that his high blood pressure was treated. [Doc. 60-12 at 4–18.] Moreover, as noted, Plaintiff's request for new shoes was considered and rejected because of security concerns [*id.* at 15] and because his shoes remained in good condition [*id.* at 14]. Finally, though Plaintiff complains that he was excluded from sick call, the medical records demonstrate both that (1) Plaintiff had a long history of making complaints that he was being excluded, and (2) Plaintiff was seen by medical staff over twenty times during his fourteen months at McCormick. [Doc. 60-12 at 7–15.] Moreover, on occasion Plaintiff even refused sick call because he stated he had already been seen by the medical staff. [*Id.* at 9–10.] In another instance, Plaintiff was not seen on sick call because of lack of security personnel but was informed that he would be seen the next day and was in fact seen the next day. [*Id.*]

A claim of deliberate indifference to serious medical needs requires a greater showing than Plaintiff has made here, even assuming Plaintiff's medical needs were serious and that a finding of negligence on the part of Defendants could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding the Due Process Clause is not implicated by a negligent act by a prison official that causes an unintended loss of or injury to life, liberty, or property); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly,

Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants were deliberately indifferent to Plaintiff's medical needs.[4]

---

[4]To the extent Plaintiff has alleged a claim against Defendant under a theory of supervisory liability [*see, e.g.*, Doc. 64 at 3], such claim should be denied. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), supervisory liability may no longer be a viable § 1983 claim).

Here, Plaintiff has failed to demonstrate sufficient facts to establish any of the three necessary parts of a supervisory liability claim. First, Plaintiff failed to show Defendants had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which Defendants should have been aware. Second, Plaintiff has failed to show Defendants acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed, Plaintiff's medical needs were addressed by medical personnel, and, although Plaintiff may disagree with the treatment he received, Defendants were not deliberately indifferent to Plaintiff's medical needs. Finally, Plaintiff has failed to establish a causal link between any inaction on the part of Defendants and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate Defendants' subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

Further, to the extent Plaintiff has alleged a claim against Defendant under the Americans with Disabilities Act ("ADA") [*see, e.g.*, Doc. 64 at 2], such claim should be denied. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. In part, a plaintiff seeking relief under the ADA must present sufficient evidence to establish that he has a disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citations omitted). Here, Plaintiff has failed to demonstrate that his paralyzed hand rises to the level of a disability in that it substantially limits one or more of his daily activities. Moreover, Plaintiff has failed to allege facts supporting a finding that his alleged disability played a role in his treatment, and therefore, he has failed to state a claim pursuant to the ADA. Quite to the contrary, Plaintiff's medical records demonstrate that he received extra care, such as the neoprene sleeve and assistance clipping his nails, because of his paralyzed arm.

Finally, to the extent Plaintiff has alleged a claim against Defendants for Defendants' failure to follow relevant SCDC policies [*see, e.g.*, Doc. 1 at 10, such claim should be denied. A violation of a prison policy that does not amount to a constitutional violation is not a viable § 1983 claim. *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (stating that § 1983 "guarantees a person's *constitutional* rights against violation by state actors. It does not provide any relief against prison rules violations assuming, *arguendo*, that such a violation

### *Sexual Harassment and Discrimination*

Defendants assert that Plaintiff's claim against James for harassment and discrimination fails to state a claim under § 1983. As an initial matter, under the Prisoner Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Court is aware of divergent views on the meaning of this section of the PLRA. Some courts hold § 1997e(e) does not apply to certain types of claims, such as those brought under the First Amendment. *See, e.g.*, *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). Other courts have held § 1997e(e) is a limitation only on damage recovery—although the courts are not in agreement as to the extent of the limitation on damages—and does not entirely bar claims for which no physical injury is alleged. *See , e.g.*, *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). The Fourth Circuit has not fully addressed the scope of § 1997e(e). In *Evans v. Welch*, the court noted in a footnote that because it had limited jurisdiction in the case, it did not consider the effect of § 1997e(e) on the case. 213 F.3d 631, 2000 WL 432390, at *1 n.2 (4th Cir. 2000) (per curiam) (unpublished table opinion). However, the court characterized § 1997e(e) as "bar[ring] suits by prisoners absent a showing of physical injury." *Id.* Similarly, in *Mayfield v. Fleming*, the Fourth Circuit held the plaintiff's claim for damages was barred because the

---

occurred" (emphasis in original)); *see also Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Accordingly, Plaintiff has failed to state a claim based on Defendants' alleged failure to follow relevant SCDC policies.

13

plaintiff could not show a physical injury.[5]  32 F. App'x 116 (4th Cir. 2002) (per curiam) (unpublished opinion).  Further, in *Perkins v. Dewberry*, the court stated that "de minimis physical injuries cannot support a claim for mental or emotional injury" and concluded that the plaintiff's mental anguish claim was meritless because his injuries were de minimis. 139 F. App'x 599 (4th Cir. 2005) (per curiam) (unpublished opinion).

This Court finds the Fourth Circuit's statements in *Evans*, *Mayfield*, and *Perkins* support the view that § 1997e(e) bars claims for mental and emotional injuries when the plaintiff cannot demonstrate more than a de minimis physical injury, and that this is the view consistently expressed by the Fourth Circuit.  Therefore, the Court must determine whether Plaintiff can demonstrate more than a de minimis physical injury to support his claim for damages resulting from emotional distress.[6]  Plaintiff alleges no such injury. Therefore, the Court finds that he is not entitled to compensatory damages.  However, though no case law exists from the Fourth Circuit, there is substantial case law from outside the Circuit that holds nominal and punitive damages may be available without a physical injury under § 1983.  See *Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003); *Allah*

---

[5] The Fourth Circuit concluded in *Mayfield* that the district court properly granted summary judgment against the plaintiff because the plaintiff's claim for injunctive relief was moot—the plaintiff was no longer at the facility were the alleged wrong occurred—and the plaintiff's claim for monetary relief was barred.  32 F. App'x 116.  The Court finds Plaintiff's ability to obtain relief on his claims is therefore similar to the plaintiff's ability to obtain relief in *Mayfield*.

[6] In reviewing the Fourth Circuit cases this Court was able to locate, the Fourth Circuit has not addressed whether § 1997e(e) applies to certain constitutional claims that typically do not involve physical injury, such as First Amendment claims.  However, the Fourth Circuit's view that § 1997e(e) bars claims of mental and emotional injury when the plaintiff cannot demonstrate more than a de minimis injury suggests the Fourth Circuit would likely embrace a broad interpretation of § 1997e(e), such as the interpretation embraced by the Eleventh Circuit in *Harris*.  *See Harris*, 216 F.3d at 984–85 ("Section 1997e(e) unequivocally states that '*No* Federal Civil Action may be brought . . . ,' and 'no' means no.  The clear and broad statutory language does not permit us to except any type of claims, including constitutional claims." (internal citation omitted) (emphasis in original)).

*v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2000), *see also Green v. Padula*, Case No. 9:07-CV-0028-CMC, 2007 WL 895484, at *2 (D.S.C. Mar. 21, 2007) (collecting cases from the Second, Third, Seventh, Ninth, Tenth, and Eleventh Circuits that have determined that § 1997e(e) does not preclude a prisoner from seeking nominal damages and from the Third, Eighth, and Tenth circuits that have determined that § 1997(e) does not preclude a prisoner from seeking punitive damages); *Etters v. Bennett*, Case No. 5:09-CT-3187, 2011 WL 976472 (E.D.N.C. Mar. 16, 2011). Accordingly, though not finding that punitive damages are available without a physical injury, the Court will consider the merits of Plaintiff's claim in an abundance of caution.

"Subjection of a prisoner to verbal abuse or profanity does not []rise to the level of a constitutional deprivation." *Tate v. McClanahan*, Case No. 2:08-CV-321-PMD, 2009 WL 935699 (D.S.C. Apr. 7, 2009) (quoting *Morrison v. Martin*, 755 F.Supp. 683, 687 (E.D.N.C. 1990), *aff'd* 917 F.2d 1302 (4th Cir. 1990)). Moreover, Plaintiff does not allege that James' statements were threatening, and even threatening statements rise to the level of a constitutional violation only when they are combined with action designed to carry out the threat. *Id.* (citing *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978)). In *Etters v. Bennett*, the Eastern District of North Carolina dealt specifically with a sexual harassment claim under the Eight and Fourteenth Amendments. 2011 WL 976472. First, the court assessed the Eighth Amendment claim, noting that a prima facie case under the Eighth Amendment requires that a plaintiff show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Id.* at *9. (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4 th Cir. 1993). The serious deprivation

prong is objective, while the deliberate indifference prong is subjective. *Id.* "Only extreme deprivations are adequate to satisfy the objective component of an Eight Amendment claim regarding conditions of confinement." *Id.* In *Etters*, plaintiffs alleged that certain defendants sexually propositioned them, threatened them with retaliation, required plaintiffs to call defendants at home, and pointed a rifle at plaintiffs. *Id.* The court held that while reprehensible, these actions did not rise to the level of an Eighth Amendment violation. The Court finds the same analysis appropriate here. While condemnable if true, Plaintiff's allegations against James do not rise to the level of an Eighth Amendment violation. James never touched Plaintiff or threatened him. His most serious allegations–that she had sex with a prisoner and took naked pictures of herself for a prisoner–do not involve Plaintiff. Therefore, summary judgment is appropriate for Plaintiff's punitive and nominal damages with regard to an Eighth Amendment violation. "The Eighth Amendment is not a state tort statute or state employment statute. Likewise, the Eighth Amendment is not Title VII." *Id.* Plaintiff's claims do not rise to the level of an extreme deprivation.

Moreover, Plaintiff makes no showing of a Fourteenth Amendment violation.

> To succeed on an equal protection claim, a plaintiff "must first demonstrate that [she] has been treated differently from others with whom [she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001)."If [she] makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." ' *Veney v. Wyche,* 293 F.3d 726, 731 (4th Cir.2002) (quoting *Morrison,* 239 F.3d at 654).

*Id.* at 11. Plaintiff has failed to allege in the Complaint with any sort of specificity those from whom he was treated differently. Therefore, his Fourteenth Amendment claim fails.

***Qualified Immunity***

Defendants argue they are entitled to qualified immunity because their conduct did not violate any clearly established rights of which a reasonable government official would have known. As discussed, the Court does not find that any clearly established rights of Plaintiff were violated. Therefore, Defendants are entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S.

at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity"). Here, Plaintiff fails to meet the first prong of the test to avoid qualified immunity; he has not alleged an actual constitutional violation. Therefore, summary judgment is appropriate on the ground of qualified immunity.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

June 3, 2014
Greenville, South Carolina